UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GLENN SCOTT MILNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. CV6 1301 |
| | ) |
| DEPARTMENT OF NAVY, | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF COMMANDER GEORGE N. T. WHITBRED IV, USN

I, GEORGE N. T. WHITBRED IV, pursuant to the provisions of 28 U.S.C. 1746, declare as follows:

1. I am the Commanding Officer of Naval Magazine, Indian Island. I have held this position since August 25, 2006. Naval Magazine, Indian Island is located in Port Hadlock, WA. As Commanding Officer, Naval Magazine, Indian Island, I report to Commander, Navy Region Northwest for shore installation management and Commander, Navy Munitions Command CONUS West Division for ammunition operations and explosives safety. Additionally, I am responsible for the safety and security of Naval Magazine Indian Island personnel and property. I have been trained as an Explosive Ordnance Disposal (EOD) Technician and currently hold the qualification as a Master EOD Technician, the highest qualification within the Department of Defense EOD program. My 20 year career has included positions of great responsibility within the Navy's explosives management and safety programs including: Ordnance Officer, Naval Weapons Stations Yorktown, VA; Commanding Officer, Explosive Ordnance Disposal Mobile Unit SEVENTEEN, Oak Harbor, WA; and EOD Officer in Charge on board USS Theodore Roosevelt (CVN-71).

2. The statements made in this declaration are based upon my personal knowledge or upon information available to me in my official capacity and are true and correct to the best of my knowledge and belief.

3. The mission of Naval Magazine, Indian Island is the storage and transshipment or "throughput" of military ammunition in support of the Navy, U.S. Joint forces and Allied forces. The Navy is responsible for all operations and the mission requirements on the installation, including law enforcement, security, force protection and explosives safety. Naval Magazine, Indian Island in entirely concurrent jurisdiction.

4. The purpose of this declaration is to describe the potential harm that would result if certain explosives safety information, especially information regarding explosive safety quantity distance arcs (ESQD arcs), were released under the Freedom of Information Act (FOIA).

5. The Department of Defense has a comprehensive explosives safety program under the auspices and authority of the Defense Department Explosive Safety Board (DDESB). The DDESB was established by Congress in 1928 to provide oversight of the development, manufacture, testing, maintenance, demilitarization, handling, transportation and storage of explosives, including chemical agents, on Department of Defense facilities worldwide. The DDESB's regulations give special attention to preventing conditions that might endanger life or property inside or outside the boundaries of Department of Defense activities. DDESB establishes Department of Defense-wide safety standards designed to prevent or correct hazardous conditions associated with ammunitions and explosives; it informs Department of Defense entities of safety issues related to ammunitions and explosives; and it promotes "best practices" – that is, technical advances and research and testing to maintain safety excellence.

DDESB also reviews and approves all general site plans for construction or modification of ammunition and explosives facilities.

6. Department of Navy explosive safety regulations supplement those of the DDESB. The Navy's primary set of regulations for explosives safety at naval facilities is entitled: Ammunition and Explosives Ashore Safety Regulations for Handling Storing and Production Renovation and Shipping, NAVSEA OP 5. This manual, and all other Navy's explosives safety manuals, contain the following warnings regarding distribution:

> DISTRIBTUION STATEMENT
> Distribution authorized to U.S. Government agencies and their contractors for administrative and operational use. Requests for this (document) must be made to the Naval Ordnance Safety and Security Activity.
>
> WARNING
> This (document) contains data whose export is restricted by the Arms Export Control Act (title 22 USC SEC 2751 et seq) or Executive Order. Unlawful export is punishable by severe criminal penalties.
>
> DESTRUCTION NOTICE
> Destroy (this document) by any method that will prevent disclosure of the contents.

7. On December 7, 2003, plaintiff submitted a FOIA request to the Commanding Officer, Naval Magazine Indian Island. Plaintiff requested the following:

> All documents on file regarding Explosive Safety Quantity Distance (ESQD) arcs or explosive handling zones at the ammunition depot at Naval Magazine Indian Island. This would include all documents showing impacts or potential impacts of activities in the explosive handling zones to the ammunition depot and the surrounding areas.

(Declaration of Anthony J. Robinson, Tab 1)

Plaintiff also requested all maps and diagrams of the ammunition depot at Naval Magazine Indian Island which showed the ESQD arcs or explosive handling zones, and documents

regarding any safety instructions or operating procedures for Navy or civilian maritime traffic within or near the explosive handling zones or ESQD arcs at Naval Magazine Indian Island.

8. My predecessor as Commanding Officer of Naval Magazine, Indian Island, Captain David Belt, recommended against disclosure of the documents, determining that release of such information could have serious force protection and homeland security repercussions. Captain Belt concluded that if released, the requested information could be used to threaten the safety of personnel, the security of the base, and the health and safety of the public in the surrounding area. He stated that, after careful review, it is apparent that the information contained in the requested documents has potential for misuse and harm. He stated further that, armed with this information, a lay person with a rudimentary knowledge of mathematics could easily determine:

- the precise location of ordnance magazines
- the types of items stored in them;
- which locations to target for maximum damage to personnel, critical infrastructure and disruption of loading and off-loading of ships;
- the mission capability of the installation;
- the installation's battle group capability and operational sustainability;
- the location of personnel and the precise numbers of personnel required to load and offload a ship.

Upon close review of the record, I strongly concur with Captain Belt's analysis, and would make the additional observation that release of the requested information could also disclose the quantities of materials stored.

9. Explosive Quantity-Distance requirements and explosives standards are designed to provide the inhabitants of nearby communities, the personnel of Department of Defense shore

activities and adjacent public and private property owners reasonable safety from serious injury or destruction from fires or explosions and to minimize the loss of valuable ammunition stores through fires or explosions. In the wrong hands, however, this information could be used to threaten the security of the installation, and to harm persons and property on the installation, as well as in nearby communities. The ultimate purpose of the explosives safety program is to *protect* people and property from the harm that could occur from an incident, accident or breach of security; the release of this information to the general public would have exactly the opposite effect. Thus, part of my job is to safeguard sensitive information that could be used to create such a security breach.

10. One aspect of the Defense Department's explosive safety program is the use of Explosive Safety Quantity Distance (ESQD) arcs. ESQD arcs are based on measured explosion effects at varying distances and define minimum separation distances for quantities of explosives based on required degrees of protection. These separation distances are established to afford reasonable safety to Department of Navy shore activities, and, to the extent possible, protect adjacent public and private property. ESQD arcs are based on the degree of protection needed, the type and amount of material involved, segregation of materials, explosive effects and permissible exposures. We use these arcs to design, array, and construct ammunition storage facilities, and to organize ammunition operations for risk mitigation and enhanced safety. Typically ESQD determinations are expressed as mathematic formulas and "arc maps." There are multiple types of arcs which are designed to be protective in different ways.

11. While all ESQD arcs can be "reversed engineered" with the right information, thereby creating targets of opportunity, some arcs reveal more than others about the particular ammunition, explosive or weapons system.

12. It is because of the varying nature of this potential threat, we are particularly careful to scrutinize requests of ESQD arc information or arc maps and make determinations regarding the release of such information on a case-by-case basis. We sometimes share ESQD information with local municipalities, if the request supports a legitimate government purpose such as emergency response preparedness. For example, we have shared ESQD information with "first responders" at both Jefferson County and the City of Port Townsend. However, ESQD information is not released to the general public if a determination is made that the release might pose a serious threat of death or injury to any person - either inside or outside the installation boundaries.

13. Every request for such information must be scrutinized carefully in order to balance the public's interest in the freedom of information about their government, with the legitimate needs of law enforcement, of homeland security, and of the health and safety of the community. This balancing must take place against the context of the safety and security requirements inherent with ammunition and explosives. While I am not a "denial authority" under FOIA, as the Commanding Officer of Naval Magazine, Indian Island, I am personally responsible for assessing the risk that release of such information would pose.

14. Plaintiff asserts that "it is inconsistent of the defendant to deny the materials requested, which do not involve nuclear materials, when it has released ESQD arcs for Trident submarine bases at Kings Bay, Georgia, and Bangor, Washington." Complaint at page 11, lines 6 - 10. I am not an expert on Trident Submarines; nor do I know the reasons why information about ESQD arcs might have been released by those commands in the past. However, I can say that Naval Magazine Indian Island not a submarine base. The nature of its mission is completely different, as are its security parameters, and physical characteristics.

15. Furthermore, Naval Magazine Indian Island is not a single-weapon system facility, such as the bases referenced where the risks are associated with a single program. Naval Magazine Indian Island is a depot for multiple weapons, weapons components, ammunition and explosives. Naval Magazine Indian Island has two primary functions: temporary storage (staging and throughput or "transhipment") and longer-term storage. The items arrive and depart daily by truck and ship. We may both see newly manufactured items as well as explosives and ammunition that, while unused, have been already been entered into the system. We store / move explosives and ammunition for all the military services, allied forces, Homeland Security and other federal agencies. We have even stored commercial explosives, such as blasting agent, when it is determined that movement through a military base is safer than through a commercial port. Thus, the mix of explosives and ammunition types and the amounts held at Naval Magazine Indian Island is in a constant state of flux. The difficulty of monitoring and protecting such explosives from misuse is concomitantly more complex.

16. Because we store and transport so many types and quantities of explosives and ammunition, a large part of our explosive safety program is focused on "compatibility" standards. DOD explosive safety standards classify ordnance by net explosive weight, hazard class and compatibility groups, etc. in order to maximize safety and minimize unintended consequences. Should an accident occur - whether man made or caused by natural events - our explosive safety program is designed to minimize and isolate any adverse effects. For example, we store and handle ammunition is such a way that a fire or explosion of in one area will not "set off" an explosion of another area. This sort of chain reaction is known as "sympathetic detonation" and is a concept that DOD has studied for years. Of course, a terrorist or other lawbreaker would employ this same concept (in reverse) to create maximum damage with

minimum outlay of effort. It is one of the reasons we are so careful about releasing data, while we are focused on safety others are not.

17. When an operational commander requires ammunitions or explosives for a forward deployed unit, a request is created that activates a worldwide ordnance logistics network. Naval Magazine Indian Island is small part of that network. While I normally have about 30 to 45 days notice of an on-load or off-load operation, I have no control over the pace or extent of the movement. This constant flow of material onto the installation, from place to place within the installation and, finally, off the installation makes security a challenge. The DOD explosive safety program helps me manage that risk and, while the establishment of ESQD arcs are a small part of the overall explosive safety program, they are an essential tool in minimizing risk of harm to persons and property - both on and off base.

18. In summary, Naval Magazine Indian Island is to be operated, to the utmost extent possible, as a safe and secure facility providing ordnance logistics to a wide array of military and federal entities. I support the right to freedom of information about the military as an essential component of the oversight and control of our government by its citizens. However, based on my training and experience, I believe *strongly* that release of the sensitive ESQD information involved in this case would jeopardize the safety and security of the storage, transportation and loading of ammunitions and explosives; that it would create a serious threat to the base and its surrounding communities, and it would do little or nothing to promote the purpose of democratic oversight which is at the heart of the Freedom of Information Act.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*[signature]*

GEORGE N. T. WHITBRED IV

Executed this 12th day of February 2007.