UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GLEN SCOTT MILNER,

    Plaintiff,

  v.

UNITED STATES DEPARTMENT OF THE NAVY,

    Defendant.

CASE NO. C06-1301-JCC

ORDER

This matter comes before the Court on the parties' cross-motions for summary judgment. (Dkt. Nos. 29 & 30.) Having considered the pleadings, affidavits and the record in this case, and finding oral argument unnecessary, the Court hereby GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's cross-motion, as follows.

**I.    BACKGROUND**

Naval Magazine Indian Island ("NMII") is located in Port Hadlock, Washington, not far from the City of Port Townsend. The mission of NMII is the storage and transshipment of ammunition, weapons, weapons components and explosives in support of the Navy, U.S. Joint forces, Homeland Security, other federal agencies and Allied forces. (Cmdr. George Whitbred Decl. ¶¶ 3, 15 (Dkt. No. 29-2).) Defendant, the United States Department of the Navy ("Navy"), is responsible for all operations on NMII, including

ORDER – 1

law enforcement, security, force protection and explosives safety. (*Id.* ¶ 3.)

Explosive Safety Quantity Distance ("ESQD") information is a tool utilized by the Navy's explosive safety program. (*Id.* ¶ 17.) Specifically, ESQD information measures the effects of an explosion at varying distances. As such, it defines minimum separation distances for various quantities of explosives. Its purpose is to afford reasonable safety to persons and property, both within NMII and on adjacent public and private property. The information is used to design, array, and construct ammunition storage facilities, and to organize ammunition operations. ESQD determinations are typically expressed as mathematic formulas and "arc maps." (*Id.* ¶ 10.) The Navy evaluates requests for ESDQ information on a case-by-case basis and does not release the information to the general public "if a determination is made that the release might pose a serious threat of death or injury to any person[.]" (*Id.* ¶ 12.) However, the Navy does sometimes share information with local municipalities for governmental purposes, such as emergency response preparedness. ESQD information specific to NMII has been shared with "first responders" at both Jefferson County and the City of Port Townsend. (*Id.*)

This case arises out of the partial denial of two substantially identical Freedom of Information Act ("FOIA") requests,[1] submitted by Plaintiff Glen Milner to the Navy in late 2003 and early 2004. Through these requests, Mr. Milner sought:

> 1. All documents on file regarding ESQD arcs or explosive handling zones at the ammunition depot at NMII, including all documents showing impacts or potential impacts of activities in the explosive handling zones to the ammunition depot and the surrounding areas;

---

[1] Plaintiff's Complaint implies that there was a substantive difference between Mr. Milner's two requests and claims that the Navy never responded to his second request, beyond notifying him that the two requests were consolidated. (Cmpl. ¶¶ 37–41 (Dkt. No. 1).) The Court has compared the two requests and finds absolutely no meaningful difference between them. The first request was addressed to "Commanding Officer, Naval Magazine Indian Island," and the second to "Commanding Officer, Naval Ordnance Safety and Security Activity," and there are some minor word changes in the second (e.g., in several places the words "Naval Magazine" have been inserted before "Indian Island"). (Milner Ltrs. Dec. 7, 2003 & Feb. 3, 2004 (Dkt No. 23, Tabs 1 & 53).) Finding no substantive difference between them, the Court holds the Navy properly consolidated the two requests and treats them as the same request for the purposes of this Order.

ORDER – 2

2. All maps and diagrams of the ammunition depot at NMII which show ESQD arcs or explosive handling zones; and

3. Documents regarding any safety instructions or operating procedures for Navy or civilian maritime traffic within or near the explosive handling zones or ESQD arcs at NMII.
</blockquote>

(Milner Ltrs. Dec. 7, 2003 & Feb. 3, 2004 (Dkt No. 23, Tabs 1 & 53).) Initially, a total of 17 document packages, totaling approximately 1000 pages, were identified as responsive to Mr. Milner's request. (Anthony J. Robinson Decl. ¶ 21 (Dkt. No. 29-4).) The administrative process that followed that initial identification was, in the Navy's words, "tortuous," "complicated" and "lengthy," admittedly perhaps unnecessarily so. (Def.'s Mot. 4 (Dkt. No. 29).) Eventually, the Navy did release many of the documents identified and requested, some in redacted form. (Katherine George Decl. (Dkt. No. 33 at 5–154).)

Through this action, filed on September 11, 2006, Mr. Milner seeks an order requiring the Navy to promptly provide him with the remainder of the information identified as responsive to his request:[2] approximately 80 documents, withheld either in whole or in part, relating to the ESQD arc information. (*See* Vaughn Index (Dkt. No. 29-8).) In addition, Mr. Milner requests the Court order the Navy to waive all fees associated with disclosure of any documents that are ordered released, declare the Navy's refusal and failure to respond to Mr. Milner's FOIA requests and appeals in a timely manner to be unlawful under FOIA, and award Mr. Milner attorneys' fees and costs. (Cmpl. 12 (Dkt. No. 1).) The parties agree that Mr. Milner has exhausted his administrative remedies, and the Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B).

The Navy maintains that the remaining ESQD arc information was properly withheld and is exempt from disclosure under FOIA exemptions 2 and 7(F). It is the Navy's position that the information

---

[2] Mr. Milner's original request and Complaint also sought disclosure of the OP-5 Manual, which sets forth safety regulations for the storage, handling and production of ammunition and explosives at Navy and Marine Corps installations throughout the world, and defines the effects of both accidental and intentional detonations. (Richard Adams Decl. ¶¶ 4, 6 (Dkt. No. 29-3).) Mr. Milner has since withdrawn his request for the OP-5 Manual (Pl.'s Resp. & Cross-Mot. for Summ. J. 2 n.1 (Dkt. No. 30); Glen Milner Decl. ¶ 17 (Dkt. No. 31)) and his claims relating to this manual are DISMISSED with prejudice.

ORDER – 3

could be used by persons of ill-will to identify the location and quantity—and in turn, vulnerabilities—of dangerous explosives, ordnance or ammunition stored at NMII, which knowledge would threaten the security of the base and place in jeopardy the safety of base personnel and the surrounding community. Specifically, the current Commanding Officer of NMII, Cmdr. Whitbred, asserts that after close review of the record he strongly agrees with his predecessor's analysis of the potential security repercussions if the withheld documents are released:

> [A]rmed with this information, a lay person with a rudimentary knowledge of mathematics could easily determine: the precise location of ordnance magazines[;] the types of items stored in them; which locations to target for maximum damage to personnel, critical infrastructure and disruption of loading and off-loading of ships; the mission capability of the installation; the installation's battle group capability and operational sustainability; the location of personnel and the precise numbers of personnel required to load and offload a ship.

(Cmdr. Whitbred Decl. ¶ 8 (Dkt. No. 29-2).) In addition, Cmdr. Whitbred adds that the withheld information could also disclose the quantities of materials stored. (*Id.*)

In support of their motions for summary judgment, both parties have submitted multiple declarations and other documentation. In addition to Cmdr. Whitbred's declaration, The Navy offers declarations from NMII's Emergency Management Officer, Stephen Smith, and the Legal Assistant to the General Counsel for Navy Region Northwest, Anthony Robinson.[3] These declarations are submitted together with a base map of NMII, and a *Vaughn* Index. Plaintiff submits declarations from himself and his attorneys, together with exhibits that include news articles and documents the Navy released to him in response to his FOIA request.

## II. FOIA

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the

---

[3] The Navy also submitted a declaration from Richard Adams, an Explosives Safety Technical Expert at the Naval Ordnance Safety and Security Activity, describing how the Navy manages requests for copies of the OP-5 Manual. (Dkt. No. 29-3.) Because Mr. Milner has since withdrawn his request for the OP-5 Manual, Mr. Adams' declaration was not considered by the Court in deciding this motion.

ORDER – 4

governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). To this end, the Act establishes a statutory presumption that any person has a judicially enforceable right to obtain access to federal agency records upon a properly presented request, regardless of the motivation for the request. *See e.g.*, *Doherty v. U.S. Dep't of Justice*, 596 F.Supp. 423, 424, 429 (S.D.N.Y. 1984) (finding DOJ's description of requester, an undocumented alien, "in lurid detail as a terrorist, a liar, a smuggler of arms, an ambusher and a hostage-taker, who used a machine gun in a residential neighborhood, all apparently in what he regards as a fight for freedom and in support of a just cause" irrelevant in determining FOIA's applicability). The presumption in favor of disclosure may be rebutted by a valid showing that the information sought falls within one of the nine exemptions contained within the Act. 5 U.S.C. § 552(d). *See, e.g.*, *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1979). However, these nine exemptions are to be narrowly construed and the agency resisting disclosure bears the burden of demonstrating that an exemption applies. 5 U.S.C. § 552(b); *Church of Scientology*, 611 F.2d at 742.

The decision whether to invoke an exemption is discretionary: so long as releasing the information would not violate another statute, an agency *may* disclose information that could be properly withheld under an exemption. *Chrysler Corp. v. Brown*, 441 U.S. 281, 292–93 (1979). However, once disclosure occurs with the apparent authority of the agency, any exemption is deemed to have been waived as to the information disclosed.[4] Because FOIA does not allow for selective disclosure, agencies must accordingly evaluate the risks that would flow from releasing an otherwise exempted document "in terms of what anyone else might do with" the released information. *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996).

---

[4] Waiver only applies, however, to the *same* record or portion of a record released; it does not apply, for example, where the substance of the record was disclosed, but not the record itself, or to a record similar to, but not duplicative of, an already disclosed record. *See, e.g.*, *Mobil Oil Corp. v. U.S. EPA,* 879 F.2d 698, 700–01 (9th Cir. 1989).

ORDER – 5

## III. LEGAL STANDARD

### A. *Summary Judgment in General*

Summary judgment motions are governed by Federal Rule of Civil Procedure 56(c), which provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). When the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact would find other than for the moving party. However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

### B. *Summary Judgment in FOIA Cases*

Nearly all FOIA cases are resolved on summary judgment. *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F.Supp.2d 1086, 1094 (C.D. Cal. 2005) (quoting *Mace v. EEOC*, 37 F.Supp.2d 1144, 1146 (E.D. Miss. 1999)). Whether a particular document fits into one of FOIA's nine exemptions is a question of law, appropriately resolved by the court. *Schiffer v. FBI*, 78 F.3d 1405, 1409 (9th Cir. 1996) (quoting *Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241, 1246 (4th Cir. 1994)). The district court determines whether an exemption applies *de novo*. 5 U.S.C. § 552(a)(4)(B).

An agency seeking to invoke one of the exemptions bears the burden of proving that exemption,

ORDER – 6

both for documents wholly withheld and partially redacted. 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). The agency may satisfy its burden by submitting detailed affidavits demonstrating that the information "logically falls within the claimed exemptions." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996) (quoting *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992)). These affidavits, which may include a *Vaughn* Index, cannot be merely conclusory; they "must contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption." *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995).

If submitted in good faith and not controverted by contrary evidence in the record, such affidavits are to be accorded substantial weight in evaluating a claim for exemption. *Minier*, 88 F.3d at 800. Respect for an agency's informed judgment is particularly important where concerns about national security are implicated. *See, e.g.*, *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003). Finally, a requester's opinion simply disputing the risk asserted by an agency possessing relevant experience that has provided sufficiently detailed affidavits is not sufficient to preclude summary judgment for the agency. *See, e.g.*, *Struth v. FBI*, 673 F.Supp. 949, 954 (E.D. Wis. 1987). *See also Halperin v. CIA*, 629 F.2d 144, 149 (D.C. Cir. 1980) ("A court must take into account . . . that any affidavit . . . of threatened harm to national security will always be speculative to some extent[.]").

**IV.   THE *VAUGHN* INDEX AND CMDR. WHITBRED'S AFFIDAVIT**

Mr. Milner argues that the *Vaughn* Index submitted by the Navy, together with Cmdr. Whitbred's affidavit, fails to describe with adequate particularity the reasons for withholding each individual document, or portion thereof. An adequate *Vaughn* Index requires both detailed descriptions of the withheld documents and particularized explanations as to why each document was properly withheld. *Lion Raisins Inc. v. U.S. Dep't of Agriculture*, 354 F.3d 1072, 1082 (9th Cir. 2004). *See also Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991) (finding the index and affidavits must include a "particularlized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption."). Unless both requirements are met, the *Vaughn* Index should be found inadequate,

ORDER – 7

containing only "conclusory and generalized allegations." *See Church of Scientology*, 611 F.2d at 742 (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)). Mr. Milner does not argue that the Navy has failed to adequately describe the withheld documents; he argues that Cmdr. Whitbred's explanation as to why ESQD information should be withheld is inadequate because it offers only a generalized explanation, not specific to each of the withheld documents listed in the *Vaughn* Index.

In applying the particularity requirement, the facts of *Weiner* are instructive. There, the FBI offered "'boilerplate' explanations . . . drawn from a 'master' response filed by the FBI for many FOIA requests." *Weiner*, 943 F.2d at 978. The FBI had made "no effort" to tailor the explanation to the specific documents withheld, or even to the particular FOIA request at issue. *Id.* at 978–79 (noting the request was for records of the FBI's investigation concerning the death of John Lennon, but "[r]emarkably, in the original *Vaughn* index submitted by the FBI, John Lennon's name does not appear at all."). In finding that the FBI's lackluster attempt failed to meet both the specificity and particularity requirements of a *Vaughn* Index inquiry, the court emphasized the purpose of a *Vaughn* Index is to provide the requester with the opportunity to argue for release of particular documents. This opportunity is only meaningful "if the requester knows the precise basis for nondisclosure." *Id.* at 979. *See also Lion Raisins*, 354 F.3d at 1083–84 (finding government affidavits inadequate when submitted entirely *ex parte*, so that no public disclosure whatsoever was made of the government's reasoning, wholly depriving the court of informed advocacy).

Here, the Court finds that the *Vaughn* Index submitted by the Navy, together with Cmdr. Whitbred's declaration, provide Mr. Milner with sufficient information to enable him to argue for release of particular documents. Mr. Milner takes no issue with the specificity of description of each of the documents listed in the *Vaughn* Index. Moreover, Cmdr. Whitbred's explanation as to why the documents are properly withheld is specific to ESQD information, which the *Vaughn* Index makes clear each of the documents contain. Together, the *Vaughn* Index and Cmdr. Whitbred's explanation serve the purpose identified in *Weiner*. If Mr. Milner wished to contest the withholding of a specific document

ORDER – 8

(instead of all of the withheld documents generally, as he does in the instant action), he would simply need to look to the description (e.g., Bates No. 00019, described as "Bishop Spit Site Map details ESQD arcs relationship to BLDG 837 to other nearby facilities") and look to Cmdr. Whitbred's declaration, and he would have all the information he needs to argue that the safety concerns particular to ESQD arc information expressed by Cmdr. Whitbred were not proper as to that document.

The Court does not read *Weiner* and *Lion Raisins* to require the *Vaughn* Index to repeat, for each and every document, Cmdr. Whitbred's concerns specific to ESQD arc information, where the concerns and justifications for withholding are properly the same for each document. Accordingly, the Court finds that the *Vaughn* Index, together with Cmdr. Whitbred's affidavit, provides an adequate basis for Mr. Milner to argue and the Court to determine whether the documents were properly withheld.

**V.    EXEMPTION 2**

FOIA's exemption 2 provides that an agency need not disclose matters "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. 552(b)(2). This breviloquent provision encompasses two different categories of internal agency matters. What are generally termed "low 2" materials are fairly trivial matters, not likely to spark a genuine and significant public interest, such as rules related to employee use of parking facilities or regulation of lunch hours. *See Hardy v. Bureau of Alcohol, Tobacco & Firearms*, 631 F.2d 653, 655 (9th Cir. 1980). In contrast, "high 2" materials are those, which if disclosed, "may risk circumvention of agency regulation." *Id.* at 656 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 369 (1976)). The Navy argues that the ESQD information at issue here was properly withheld as high 2 information.

The parties, however, disagree as to the test properly applied to "high 2" materials in the Ninth Circuit. The Navy argues that the Court should apply the widely accepted *Crooker* test, which requires the Court first find that the documents at issue are "predominantly internal" and second, that disclosure would significantly risk circumvention of agency regulation or statute. *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1074 (D.C. Cir. 1981). Mr. Milner objects, arguing that the Ninth

ORDER – 9

1  Circuit has never adopted the *Crooker* test, and that the test applied in this circuit was announced in
2  *Hardy v. Bureau of Alcohol, Tobacco & Firearms*. That test, according to Mr. Milner, does not ask
3  whether the documents are "predominantly internal," instead, it asks whether the information at issue is
4  "law enforcement material." If the information is not law enforcement materials then the inquiry is over,
5  because Mr. Milner asserts that in the Ninth Circuit no other kind of agency information is protected as
6  high 2 material.

7  Plaintiff's argument relies on a superficial and selective reading of *Hardy* and its progeny. *Hardy*
8  itself involved a FOIA request for quintessential law enforcement materials. *Hardy*, 631 F.2d at 655.
9  However, since *Hardy*, cases that have at least nominally attempted to apply its "law enforcement"
10 language have done so broadly, and have protected under that mantle information not traditionally or
11 obviously defined as such. *See, e.g.*, *Dirksen v. U.S. Dep't of Health & Human Servs.*, 803 F.2d 1456,
12 1458–59 (9th Cir. 1986) (finding DHHS' internal processing guidelines for claims submitted by health
13 care providers under the Medicare program properly withheld as "law enforcement material").
14 Furthermore, the most recent Ninth Circuit case to address the proper application of exemption 2 clearly
15 indicated that the exemption embraces more than law enforcement materials. Specifically, *Maricopa*
16 *Audubon Society v. United States Forest Service* held "that goshawk nest-site information does not
17 constitute 'law enforcement material,' *or any other kind of material* that may be withheld under
18 exemption 2." 108 F.3d 1082, 1087 (9th Cir. 1997) (emphasis added).

19 In fact, when *Hardy*, *Dirksen* and *Maricopa* are read together, the test they embody bears more
20 than a passing resemblance to the *Crooker* test. As in *Crooker*, the Ninth Circuit cases have asked
21 whether disclosure would risk circumvention of law, *see, e.g.*, *Dirksen*, 803 F.2d at 1458, and if the
22 material is "predominately internal." *Maricopa*, 108 F.3d at 1085. The "law enforcement" material held
23 protected in *Hardy* and *Dirksen* met these two requirements; the goshawk nest location information at
24 issue in *Maricopa* did not. Applying this test, as discussed below, the Court finds the ESQD materials
25 were properly withheld under exemption 2.

26 ORDER – 10

1    First, the Navy asserts and Mr. Milner does not dispute that the ESQD arc information was
2 compiled for predominately internal purposes: to design, array, and construct ammunition storage
3 facilities, and to organize ammunition operations. (Cmdr. Whitbred Decl. ¶ 10 (Dkt. No. 29-2).) (*See
4 also* Pl.'s Reply 12 (Dkt. No. 37) (asserting that the ESQD records were complied "for the sole purpose
5 of obtaining internal administrative approval of construction projects.").) That the information is also
6 made available to local municipalities does not negate the fact that these documents are predominantly
7 internal.

8    Second, the Court finds that disclosure of the ESQD arc information withheld in each of the
9 documents listed in the *Vaughn* Index would significantly risk circumvention of law. The "law" sought to
10 be circumvented need not be defined by a particular agency regulation or statute. *See e.g.*, *Nat'l Treasury
11 Employees Union v. U.S. Customs Serv.*, 802 F.2d 525, 530–31 (D.C. Cir. 1986) (finding the
12 circumvention of law analysis "is satisfied whether or not the agency identifies a specific statute or
13 regulation threatened by disclosure."). That the disclosure would cause the information to lose its utility
14 is sufficient. *See, e.g.*, *Dirksen*, 803 F.2d at 1459. *See also L.A. Times Commc'ns, LLC v. Dep't of Army*,
15 442 F.Supp.2d 880, 902 (C.D. Cal. 2006) (finding exempt information that, if disclosed, "would risk
16 circumvention of the law and the military's efforts to establish stability for reconstruction efforts Iraq
17 [*sic*].") Moreover, under the "mosaic" approach, the exemption has been applied to protect information
18 contained in several documents that are not by themselves dangerous, but could in the aggregate be
19 assembled to reveal sensitive information, which disclosure could be dangerous. *See, e.g.*, *L.A. Times*,
20 442 F.Supp.2d at 898–99 (quoting *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1064–65 (3d Cir.
21 1995)).

22   In addition, when the government interest involved is particularly weighty—such as where
23 concerns about national security are justified—courts are more likely to defer to the agency's expertise in
24 assessing the risk of disclosure. *See, e.g., Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926, 927–28 (surveying
25 the significant authority "counseling deference in national security matters"). The Court disagrees with
26 ORDER – 11

Plaintiff's assertion that this case "is not about national security." (Pl.'s Reply 7 (Dkt. No. 37).) Plaintiff appears to take the position that national security is only implicated when the information at issue is "classified as secret" or is of a type that is never released to the public. Information need not be "secret" to implicate national security. That the Navy finds it advisable to, for example, share information with local municipalities[5] in order to better equip first responders in the event of an emergency does not undermine the legitimacy of the Navy's risk assessment. Such a conclusion would be antithetical to any definition of the word "security."

Accordingly, the Court finds that Cmdr. Whitbred's risk assessment is entitled to deference. Plaintiff does not offer any evidence truly disputing the Navy's risk assessment. Instead, Plaintiff essentially argues that because the Navy has released some ESQD arc information in the past, its assertion that release of the information at issue presents a legitimate risk cannot be taken seriously. The Court disagrees with Plaintiff's judgment and finds that the information was properly withheld under exemption 2. First, its release could cause the information to lose its utility in keeping people and property safe from harm in the event of an explosive incident. Second, it could provide essentially a roadmap to wreak the most havoc possible to those persons bent on causing harm, risking circumvention of the Navy's security, force protection and explosives safety efforts. To release this information would be to provide the proverbial fox a virtual map to the chicken coop. *See Dirksen*, 803 F.2d at 1459.

## VI.   SEGREGABILITY

Even where material falls within one of the enumerated exemptions, FOIA requires disclosure of "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). It is reversible error for a district court "to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Church of Scientology*, 611

---

[5] Somewhat mystifyingly, Plaintiff also points to the fact that the Navy "routinely" distributes this information internally to "hundreds of Navy personnel" as somehow supporting his stance that this case is "not about national security."

ORDER – 12

1  F.2d at 744. Non-exempt portions of a document must be disclosed unless the court finds that they are

2  "inextricably intertwined with exempt portions" to such a degree that separating the two would "impose

3  significant costs on the agency and produce an edited document with little informational value."

4  *Willamette Indus., Inc. v. U.S.*, 689 F.2d 865, 867–68 (9th Cir. 1982) (quoting *Mead Data Cent., Inc. v.*

5  *U.S. Dep't of Air Force*, 566 F.2d 242, 260–61 (D.C.Cir. 1977)).

6        Having reviewed the affidavits, particularly that of Anthony Robinson, which provides a detailed

7  outline of the Navy's efforts over four years to respond to Mr. Milner's request, the *Vaughn* Index, and

8  the documents provided to Mr. Milner in whole and in part attached to Ms. George's declaration, the

9  Court finds that the Navy has met FOIA's segregability requirement. Many of the materials the Navy

10  released to Mr. Milner were redacted; per the *Vaughn* Index, the materials withheld are only those related

11  specifically to ESQD information, which was properly withheld under exemption 2.

12  **VII.   CONCLUSION**

13        For the foregoing reasons, this Court finds that the ESQD information was properly withheld

14  under FOIA's exemption 2. The Court does not reach whether the information could also have been

15  properly withheld under exemption 7(F). In addition, as to Plaintiff's request that the Court declare the

16  Navy's refusal and failure to respond to Mr. Milner's FOIA requests and appeals in a timely matter was

17  unlawful under FOIA, this request is also DENIED. The proper remedy when an agency fails to comply

18  in a timely manner with FOIA is for the requester to bring an action in district court. 5 U.S.C. §

19  552(a)(6)(C). Accordingly, the Court GRANTS Defendant's motion for summary judgment and DENIES

20  Plaintiff's cross-motion.

21        SO ORDERED this 30th of October, 2007.

22

23                                        John C. Coughenour
                                      United States District Judge

24

25

26  ORDER – 13